# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

U.S. ...

2014 JUL -1 PM 3:2...

B. West

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* | ) | |
| PHILLIP S. SCHAENGOLD, | ) | |
| | ) | Civil Action No. CV 411-166 |
| Plaintiff - Relator, | ) | |
| | ) | |
| v. | ) | **FILED *EX PARTE* AND** |
| | ) | **UNDER SEAL** |
| TATTNALL HOSPITAL COMPANY, LLC, | ) | |
| THE DOCTORS HOSPITAL OF TATTNALL, | ) | |
| ORTHOPEDIC CENTER, P.C., MICHAEL | ) | |
| KLEINPETER, JOHN P. GEORGE, M.D., | ) | |
| MICHAEL SCRIBNER, | ) | |
| | ) | |
| Defendants. | ) | |

## THE UNITED STATES' NOTICE OF INTERVENTION
## FOR PURPOSES OF SETTLEMENT

Pursuant to the False Claims Act, 31 U.S.C. §§ 3730(b)(2) and (4), the United States, by and through the undersigned counsel, hereby notifies the Court of its election to intervene in this action for the limited purposes of settlement.

The parties have executed a settlement agreement ("Agreement") resolving this case with no issues to remain before the Court. The Agreement is attached hereto as "Exhibit A." After the Defendants' payment and the United States' receipt of the settlement amount, the United States and the Relator will file a stipulation of dismissal of this case.

In connection with the filing of this Notice, the United States and the Relator request that the Relator's complaint, this Notice including Exhibit A, the attached proposed Order, and all other matters and filings occurring in this action be unsealed, but that all previous filings and papers on file in this action remain under seal and not be made public because such papers were

provided by law to the Court alone for the sole purpose of evaluating whether the seal and time

for making an election to intervene should be extended or partially lifted.

A proposed order is attached for the Court's consideration.

This __1st__ day of July, 2014.

Respectfully submitted,

EDWARD J. TARVER
UNITED STATES ATTORNEY

EDGAR D. BUENO
Assistant United States Attorney
Virginia Bar No. 41307
U.S. Attorney's Office
P.O. Box 8970
Savannah, Georgia 31412
(912) 652-4422
edgar.bueno@usdoj.gov

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

UNITED STATES OF AMERICA *ex rel.* )
PHILLIP S. SCHAENGOLD, )
                              )      Civil Action No. CV 411-166
        Plaintiff - Relator, )
                              )
v. )
                              )
TATTNALL HOSPITAL COMPANY, LLC, )
THE DOCTORS HOSPITAL OF TATTNALL, )
ORTHOPEDIC CENTER, P.C., MICHAEL )
KLEINPETER, JOHN P. GEORGE, M.D., )
MICHAEL SCRIBNER, )
                              )
        Defendants. )

## ORDER LIFTING THE SEAL ON THE CASE

Upon consideration of the United States' Notice of Intervention for Purposes of Settlement, **IT IS HEREBY ORDERED THAT**:

1. The Relator's complaint, the United States' Notice of Intervention for Purposes of Settlement (including Exhibit A), and this Order be unsealed;

2. All other matters and filings occurring after the date of this Order be unsealed; and

3. All previous filings and papers on file in this action, unless otherwise ordered by the Court, shall remain under seal.

The parties will file a stipulation of dismissal of this case.

**IT IS SO ORDERED.**

_____
UNITED STATES DISTRICT JUDGE

Dated: _____

## CERTIFICATE OF SERVICE

I hereby certify that on this __1st__ day of July, 2014, a true and correct copy of the United States' Notice of Election to Intervene for Purposes of Settlement was mailed by first-class mail to counsel for Relator:

> Lars H. Liebeler
> Thaler Liebeler, LLP
> International Square
> 1825 Eye Street, NW
> Suite 400
> Washington, D.C. 20006

> Andrew L. Gorman
> Bowen & Gorman
> 535 East Congress Street
> Savannah, GA 31401

Because this action has been filed under seal pursuant to 31 U.S.C. § 3730(b), the defendants have not been served with copies of the foregoing.

Edgar D. Bueno
Assistant United States Attorney
Southern District of Georgia

**Exhibit A**

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into among the United States of America, acting through the United States Attorney's Office for the Southern District of Georgia and on behalf of the Office of Inspector General for the Department of Health and Human Services ("OIG-HHS") (collectively, the "United States"), and Tattnall Hospital Company, LLC, d/b/a The Doctors Hospital of Tattnall, Orthopedic Center, P.C., Community Hospital Holding Company, LLC, Michael Kleinpeter, John P. George, M.D. (collectively, "Optim Healthcare"), and Phillip S. Schaengold (the "Relator"), through their authorized representatives. All of the aforementioned individuals, agencies, and entities will be referred to collectively hereinafter as "the Parties."

### RECITALS

A.      Tattnall Hospital Company, LLC is a limited liability corporation organized under the laws of the State of Georgia whose principal place of business is in Savannah, Georgia. Tattnall Hospital Company, LLC also operates a designated critical access hospital located in Reidsville, Georgia under the d/b/a designation The Doctors Hospital of Tattnall. Community Hospital Holding Company, LLC is a limited liability corporation organized under the laws of the State of Georgia whose principal place of business is in Savannah, Georgia, which is the sole member of Tattnall Hospital Company, LLC. Orthopedic Center, P.C. is a professional corporation whose principal place of business is in Savannah, Georgia. Michael Kleinpeter is the chief executive officer of the Orthopedic Center, P.C. John P. George, M.D. is a physician from Savannah, Georgia.

B.      On June 28, 2011, Phillip S. Schaengold filed an action in the United States District Court for the Southern District of Georgia captioned *United States ex rel. Schaengold, v.*

*The Tattnall Hospital Company, LLC et al.*, Docket No. CV 411-166, pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the "Civil Action").

C. The United States contends that Optim Healthcare submitted or caused to be submitted claims for payment to the Medicare program ("Medicare"), Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1. The United States contends that it has certain civil claims against Optim Healthcare, under the False Claims Act, 31 U.S.C. §§ 3729-3733, arising from claims submitted to the Medicare program for payment and the retention of funds derived from such claims, which the United States alleges were unlawful as a result of the following alleged conduct:

1. From February 2008 through December 2012, Optim Healthcare allegedly submitted or caused to be submitted claims for outpatient hospital services whose billed charges were allegedly inconsistent with and not reflective of Optim Healthcare's actual cost of providing the service.

2. From January 2009 to April 2012, Optim Healthcare allegedly submitted or caused to be submitted claims improperly reflecting services performed at Optim Healthcare's ambulatory surgical center in Savannah.

3. From January 2009 through October 2009, Optim Healthcare allegedly violated the Physician Self-Referral Statute, 42 U.S.C. § 1395nn, because there was no applicable exception with respect to certain physical therapy and occupational therapy services billed by Tattnall Hospital Company, LLC based upon referrals from physicians from Orthopedic Center, P.C.

4. From February 2008 through September 2011, Optim Healthcare allegedly violated the Physician Self-Referral Statute, 42 U.S.C. § 1395nn, by engaging in a financial

*Settlement Agreement between the United States and Tattnall Hospital Company, LLC d/b/a Doctors Hospital of Tattnall; Orthopedic Center, P.C; Community Hospital Holding Company, LLC.; Michael Kleinpeter, and John P. George, M.D.*

arrangement between referring physicians from Orthopedic Center, P.C. and The Doctors Hospital of Tattnall that did not satisfy the requirements of a direct compensation exception.

The conduct described in this Paragraph C is referred to below as the "Covered Conduct."

D.    This Agreement is neither an admission of liability by Optim Healthcare, nor a concession by the United States that its claims are not well founded. Optim Healthcare expressly denies the allegations of the United States and Relator as set forth herein and in the Civil Action.

E.    To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Agreement, the Parties agree and covenant as follows:

<u>TERMS AND CONDITIONS</u>

1.    Optim Healthcare shall pay to the United States a total of four million dollars ($4,000,000.00) ("Settlement Amount") by electronic funds transfer no later than seven (7) business days after the Effective Date of this Agreement pursuant to written instructions to be provided by the United States Attorney's Office for the Southern District of Georgia.

2.    Conditioned upon the United States receiving the Settlement Amount payment, the United States agrees that it shall pay to Relator by electronic funds transfer a total of seven hundred and sixty thousand dollars ($760,000.00) as his relator's share under 31 U.S.C. § 3730(d)(1), as soon as feasible after receipt of the Settlement Amount.

3.    Conditioned upon Relator's filing a stipulation of dismissal with prejudice of all claims in the Civil Action as set forth in Paragraph 14 and Relator's release as set forth in Paragraph 5 of this Agreement, Optim Healthcare shall pay to the Relator thirty-nine thousand eight hundred twenty-five dollars and forty-six cents ($39,825.46) no later than seven (7)

3

business days after the Effective Date of this Agreement to Relator's counsel, Thaler Liebeler, LLP for expenses, attorneys' fees and costs.

4.  Subject to the exceptions in Paragraph 6 (concerning excluded claims) below, and conditioned upon Optim Healthcare's full payment of the Settlement Amount, the United States releases Tattnall Hospital Company LLC d/b/a The Doctors Hospital of Tattnall, Orthopedic Center, P.C., Michael Kleinpeter, John P. George, M.D., and Community Hospital Holding Company, LLC, together with their current and former parent corporations; direct and indirect subsidiaries; brother or sister corporations; divisions; current or former owners, officers, directors, employees, agents, shareholders, attorneys, and affiliates; and the successors and assigns of any of them, from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of payment by mistake, unjust enrichment, and fraud.

5.  Conditioned upon Optim Healthcare's full payment of the Settlement Amount, Relator, for himself and for his heirs, successors, attorneys, agents, and assigns, releases Tattnall Hospital Company LLC d/b/a The Doctors Hospital of Tattnall, Orthopedic Center, P.C., Michael Kleinpeter, John P. George, M.D., and Community Hospital Holding Company, LLC, together with their current and former parent corporations; direct and indirect subsidiaries; brother or sister corporations; divisions; current or former owners, officers, directors, employees, agents, shareholders, attorneys, and affiliates; and the successors and assigns of any of them from all claims for relief, actions, rights, causes of action, suits, debts, obligations, liabilities, demands, losses, damages, costs and expenses of any kind, whether known or unknown as of the Effective Date of this Agreement that Relator has, may have, could have asserted, or may assert

4

in the future on his behalf or on behalf of the United States or any state or local government or sovereign, including but not limited to any claim relating in any way to the Covered Conduct, the allegations of the Complaint, the filing of the Civil Action, the investigation and prosecution of this matter, or the negotiation of this Agreement, including all liability, claims, demands, actions or causes of action existing as of the Effective Date of this Agreement, fixed or contingent, in law or in equity, in contract or in tort, or under any federal or state statute, regulation, or common law, including for any liability to Relator or his attorney arising under 31 U.S.C. § 3730(d) or any other federal or state statute for expenses or attorneys' fees and costs. Relator represents and warrants that he has not assigned or transferred any of Relator's claims to any person, entity, or thing and covenants and agrees not to assert or pursue any of Relator's claims in any way.

6.    Notwithstanding the releases given in Paragraphs 4-5 of this Agreement, or any other term of this Agreement, the following claims of the United States are specifically reserved and are not released:

    a.    Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

    b.    Any criminal liability;

    c.    Except as explicitly stated in this Agreement, any administrative liability, including mandatory or permissive exclusion from Federal health care programs;

    d.    Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct; and

    e.    Any liability based upon obligations created by this Agreement.

7.    The Relator and his heirs, successors, attorneys, agents, and assigns shall not

Settlement Agreement between the United States and Tattnall Hospital Company, LLC d/b/a Doctors Hospital of Tattnall; Orthopedic Center, P.C; Community Hospital Holding Company, LLC.; Michael Kleinpeter, and John P. George, M.D.

object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B). Conditioned upon the Relator's receipt of the full payment from the United States described in Paragraph 2, the Relator and his heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States, its agencies, officers, agents, employees, and servants, from any claims to a share of the proceeds of this Agreement.

8. Optim Healthcare waives and shall not assert any defenses it may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment to the Constitution, or under the Excessive Fines Clause in the Eighth Amendment to the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action. Nothing in this paragraph or any other provision of this Agreement constitutes an agreement by the United States concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

9. Optim Healthcare's Releases:

a. Optim Healthcare fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Optim Healthcare has asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct and the United States' investigation and prosecution thereof.

b. In consideration for the mutual promises herein, Optim Healthcare, together with its current and former officers, directors, trustees, employees, agents and

6

shareholders, as well as its predecessors and any direct or indirect subsidiaries, divisions, affiliates, successors, assigns, and attorneys hereby release and discharge Relator, his heirs, successors, attorneys, agents, and assigns, from all claims for relief, actions, rights, causes of action, suits, debts, obligations, liabilities, demands, losses, damages, costs and expenses of any kind, whether known or unknown as of the Effective Date of this Agreement that Optim Healthcare has, may have, could have asserted, or may assert in the future on its behalf including but not limited to any claim relating in any way to the Covered Conduct, the allegations of the Complaint, the filing of the Civil Action, the investigation and prosecution of this matter, or the negotiation of this Agreement, including all liability, claims, demands, actions or causes of action existing as of the Effective Date of this Agreement, fixed or contingent, in law or in equity, in contract or in tort, or under any federal or state statute, regulation, or common law. Optim Healthcare represents and warrants that it has not assigned or transferred any potential claims to any person, entity, or thing and covenants and agrees not to assert or pursue any claims in any way against Relator.

10. The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor related to the Covered Conduct; and Optim Healthcare agrees not to resubmit to any Medicare contractor any previously denied claims related to the Covered Conduct, and agrees not to appeal any such denials of claims.

11. Optim Healthcare agrees to the following:

a. Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 and 1396-1396w-5; and the regulations and official program

directives promulgated thereunder) incurred by or on behalf of Optim Healthcare, its present or former officers, directors, employees, shareholders, and agents in connection with:

    (1)    the matters covered by this Agreement;

    (2)    the United States' audit(s) and civil investigation(s) of the matters covered by this Agreement;

    (3)    Optim Healthcare's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

    (4)    the negotiation and performance of this Agreement; and

    (5)    the payment Optim Healthcare makes to the United States pursuant to this Agreement.

b.    Future Treatment of Unallowable Costs:  Unallowable Costs shall be separately determined and accounted for in non-reimbursable cost centers by Optim Healthcare, and Optim Healthcare shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by Optim Healthcare or any of its subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP programs.

c.    Treatment of Unallowable Costs Previously Submitted for Payment: Optim Healthcare further agrees that within 90 days of the Effective Date of this Agreement it shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors,

*Settlement Agreement between the United States and Tattnall Hospital Company, LLC d/b/a Doctors Hospital of Tattnall; Orthopedic Center, P.C; Community Hospital Holding Company, LLC.; Michael Kleinpeter, and John P. George, M.D.*

and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by Optim Healthcare or any of their subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the unallowable costs. Optim Healthcare agrees that the United States, at a minimum, shall be entitled to recoup from Optim Healthcare any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by Optim Healthcare or any of their subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this Paragraph) on Optim Healthcare or any of its subsidiaries or affiliates' cost reports, cost statements, or information reports.

d.     Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine Optim Healthcare's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

12.     This Agreement is intended to be for the benefit of the Parties only, including current and former parent corporations; direct and indirect subsidiaries; brother or sister corporations; divisions; current and former owners; officers, directors, affiliates, the successors and assigns of any of them. The Parties do not release any claims against any other person or

*Settlement Agreement between the United States and Tattnall Hospital Company, LLC d/b/a Doctors Hospital of Tattnall; Orthopedic Center, P.C; Community Hospital Holding Company, LLC.; Michael Kleinpeter, and John P. George, M.D.*

entity, except to the extent provided for in Paragraph 13 (waiver for beneficiaries paragraph), below.

13.    Optim Healthcare agrees that it waives and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third-party payers based upon the claims defined as Covered Conduct.

14.    After the Effective Date of this Agreement, the United States shall promptly file in the Civil Action a Notice of Intervention for Settlement Purposes as to the Covered Conduct. After receipt of the Settlement Amount payment described in Paragraph 1 above, the United States and Relator shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal of the Civil Action pursuant to Rule 41(a)(1), as follows:

a.    the Stipulation of Dismissal shall be with prejudice as to the Relator's claims, pursuant to and consistent with the terms and conditions of this Agreement;

b.    the Stipulation of Dismissal shall be with prejudice as to the United States' claims as to the Covered Conduct, pursuant to and consistent with the terms and conditions of this Agreement; and

c.    the Stipulation of Dismissal shall be without prejudice as to the United States as to all other claims, pursuant to and consistent with the terms and conditions of this Agreement.

15.    Each party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

16.    Each party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

10

17.     This Agreement is governed by the laws of the United States.  The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Southern District of Georgia.  For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any party for that reason in any subsequent dispute.

18.     This Agreement constitutes the complete agreement between the Parties.  This Agreement may not be amended except by written consent of the Parties.

19.     The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

20.     This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

21.     This Agreement is binding upon Optim Healthcare's successors, transferees, heirs, and assigns.

22.     This Agreement is binding upon Relator's successors, transferees, heirs, and assigns.

23.     All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

24.     This Agreement is effective on the date of signature of the last signatory to the Agreement (the "Effective Date" of this Agreement).  Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

[signature pages to follow]

*Settlement Agreement between the United States and Tattnall Hospital Company, LLC d/b/a Doctors Hospital of Tattnall; Orthopedic Center, P.C; Community Hospital Holding Company, LLC.; Michael Kleinpeter, and John P. George, M.D.*

THE UNITED STATES OF AMERICA


DATED: 6/19/14                    BY: _____
                                      EDGAR D. BUENO
                                      Chief, Civil Division
                                      United States Attorney's Office
                                      Southern District of Georgia

*Settlement Agreement between the United States and Tattnall Hospital Company, LLC d/b/a Doctors Hospital of Tattnall; Orthopedic Center, P.C; Community Hospital Holding Company, LLC.; Michael Kleinpeter, and John P. George, M.D.*

THE UNITED STATES OF AMERICA

DATED: 6/30/14     BY: _____
                   ROBERT DECONTI
                   Assistant Inspector General for Legal Affairs
                   Office of Counsel to the Inspector General
                   Office of Inspector General
                   U.S. Department of Health and Human Services

*Settlement Agreement between the United States and Tattnall Hospital Company, LLC d/b/a Doctors Hospital of Tattnall; Orthopedic Center, P.C.; Community Hospital Holding Company, LLC.; Michael Kleinpeter, and John P. George, M.D.*

OPTIM HEALTHCARE

DATED: 6/19/2014          BY: _____
                              JOHN P. GEORGE, M.D.
                              On behalf of TATTNALL HOSPITAL
                              COMPANY LLC d/b/a THE DOCTORS
                              HOSPITAL OF TATTNALL; ORTHOPEDIC
                              CENTER, P.C.; COMMUNITY HOSPITAL
                              HOLDING COMPANY, LLC


DATED: 6/19/2014          BY: _____
                              MICHAEL KLEINPETER


DATED: 6/19/2014          BY: _____
                              JOHN P. GEORGE, M.D.


DATED: _____         BY: _____
                              RICHARD L. SHACKELFORD
                              MICHAEL E. PAULHUS
                              Counsel for TATTNALL HOSPITAL
                              COMPANY LLC d/b/a THE DOCTORS
                              HOSPITAL OF TATTNALL; ORTHOPEDIC
                              CENTER, P.C.; and COMMUNITY
                              HOSPITAL HOLDING COMPANY, LLC

14

<u>OPTIM HEALTHCARE</u>

DATED: _____          BY: _____
                                  JOHN P. GEORGE, M.D.
                                  On behalf of TATTNALL HOSPITAL
                                  COMPANY LLC d/b/a THE DOCTORS
                                  HOSPITAL OF TATTNALL; ORTHOPEDIC
                                  CENTER, P.C.; COMMUNITY HOSPITAL
                                  HOLDING COMPANY, LLC


DATED: _____          BY: _____
                                  MICHAEL KLEINPETER


DATED: _____          BY: _____
                                  JOHN P. GEORGE, M.D.


DATED: 6|19|14                BY: _____
                                  RICHARD L. SHACKELFORD
                                  MICHAEL E. PAULHUS
                                  Counsel for TATTNALL HOSPITAL
                                  COMPANY LLC d/b/a THE DOCTORS
                                  HOSPITAL OF TATTNALL; ORTHOPEDIC
                                  CENTER, P.C.; and COMMUNITY
                                  HOSPITAL HOLDING COMPANY, LLC

Settlement Agreement between the United States and Tattnall Hospital Company, LLC d/b/a Doctors Hospital of Tattnall; Orthopedic Center, P.C.; Community
Hospital Holding Company, LLC; Michael Kleinpeter, and John P. George, M.D.

## RELATOR SCHAENGOLD

DATED: *June 10, 2014*                BY: *Phillip S. Schaengold*
                                          PHILLIP S. SCHAENGOLD


DATED: _____                BY: _____
                                          LARS H. LIEBELER
                                          Counsel for Relator

*Settlement Agreement between the United States and Tattnall Hospital Company, LLC d/b/a Doctors Hospital of Tattnall; Orthopedic Center, P.C; Community Hospital Holding Company, LLC.; Michael Kleinpeter, and John P. George, M.D.*

RELATOR SCHAENGOLD

DATED: _____          BY: _____
                                   PHILLIP S. SCHAENGOLD


DATED: **6/18/14**               BY: _____
                                   LARS H. LIEBELER
                                   Counsel for Relator

*Settlement Agreement between the United States and Tattnall Hospital Company, LLC d.b.a Doctors Hospital of Tattnall; Orthopedic Center, P.C.; Community Hospital Holding Company, LLC.; Michael Kleinpeter, and John P. George, M.D.*